UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TAMARA MARIE CORTER, a married individual, | CASE NO. CV-12-173-EFS |
| Plaintiff, | **ORDER GRANTING DOUGLAS COUNTY'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| DOUGLAS COUNTY, a political subdivision of the State of Washington, and STEVE GROSECLOSE, individually and as an agent of Douglas County, | |
| Defendant. | |

Before the Court, without oral argument, is Defendant Douglas County's Motion for Summary Judgment. ECF No. 17. Douglas County ("County") asks the Court to grant summary judgment on Plaintiff Tamara Corter's 42 U.S.C. § 1983 claims against it because there is insufficient evidence that the County ratified any wrongful conduct by Defendant Steve Groseclose or failed to train its employees. Ms. Corter opposes the motion. ECF No. 20. After reviewing the record and relevant authority, the Court is fully informed. As set forth below, the Court grants the County's summary-judgment motion.

///

//

/

ORDER GRANTING DOUGLAS COUNTY'S MOTION FOR SUMMARY JUDGMENT- 1

**A.    Background[1]**

        Ms. Corter and Mr. Groseclose were previously married and they have two sons from this marriage.  Following their divorce, Ms. Corter had primary custody of the two boys.  The oldest son suffers from severe autism and requires significant care and attention.

        On March 30, 2009, Ms. Corter was prescribed sleep medicine to help her rest; she had become sleep deprived caring for the oldest son.  On the same day, Ms. Corter's friend called the Chelan County Deputy Sheriff's Office because she was concerned about Ms. Corter's slurred speech and incoherency after speaking with her on the phone.  ECF No. 18-1, Ex. A, at 39-41.  Later that day, officers conducted a "welfare check" on Ms. Corter and prepared an incident report about their visit:

> Spoke with Tammy [Corter] along with her father, William Heitzman.  Tammy said she was upset, but did not feel like harming herself or anyone else.  Tammy just got a prescription for Triaz. . . .sleeping pills filled at the Chelan Safeway.  On the way home said she took two and felt

---

[1]  The parties submitted a Joint Statement of Uncontroverted Facts.  ECF No. 24.  The Court treats these facts as established, Fed. R. Civ. P. 56(d), and sets these forth without citation to the record.  Any disputed facts or quotations are supported by a citation.  When considering this motion, the Court 1) believed the undisputed facts and Plaintiff's evidence, 2) drew all justifiable inferences therefrom in Plaintiff's favor, 3) did not weigh the evidence or assess credibility, and 4) did not accept assertions made by Plaintiff that were flatly contradicted by the record.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Scott v. Harris*, 550 U.S. 372, 380 (2007).

ORDER GRANTING DOUGLAS COUNTY'S MOTION FOR SUMMARY JUDGMENT- 2

> fine.  William said he was the one who took her earlier
> today to Wenatchee.  He said they met with MHP, but they
> were unable to help as she was not making any threats and
> did not want voluntary help.  William is staying the night
> with Tammy and the 17 and 8 year old boys. The 17 YO is
> autistic.  One rifle belonging to the ex-boyfriend possibly
> in the house unk. where.  William will alt and call if he
> finds it so it can be taken for safe keeping.

ECF No. 18-1, Ex. D (ellipses in original).  The incident report was

placed on the law-enforcement database, Spillman.

Because Mr. Groseclose works for the County as a detective, he

has access to Spillman.  His access to Spillman is subject to County

policies that restrict is access to work-related reasons and require

him to maintain the confidentiality of such information as necessary

to perform his investigative duties.  Nonetheless, in contravention of

County policy, Mr. Groseclose accessed Spillman to obtain the incident

report pertaining to Ms. Corter.  Mr. Groseclose then used this

obtained information, including Ms. Corter's medical information, to

support a guardianship petition for his oldest son in 2009.

Mr. Groseclose has been disciplined by the County for disclosing

investigative information on two prior occasions; neither involved

improper access and use of Spillman information.  In September 2005,

Mr. Groseclose unnecessarily disclosed information about a Child

Protective Services complaint to a woman's employer during an attempt

to contact the woman.  The County responded to the woman's formal

complaint and investigated the matter.  Mr. Groseclose was directed by

the County to complete counseling for violating the following portion

of his contract:

> Employee(s) shall be aware of and shall observe legal
> restrictions on the release and dissemination of

> information. He/She shall disclose such information as
> required in the proper performance of his/her duties.
> Employee(s) shall neither disclose nor use for his/her
> personal interest any confidential information acquired by
> him/her in the course of his/her official duties.
> Employee(s) shall treat as confidential matters related to
> him/her in official confidence regarding investigation,
> internal affairs and sensitive personnel information.

ECF No. 20-1, at 29-30.

The second incident occurred in May 2006 when Mr. Groseclose disclosed to a friend that she was likely being investigated for assault. This disclosure violated the County's Standard Operating Procedures Manual:

> You must keep what you learn at work confidential. You may
> not attempt to gain personally from anything you learn. Do
> not allow unauthorized personnel access to criminal
> records. You may not make any false reports or entries or
> remove any existing entry to any official document without
> proper authority. You will frequently learn information
> which is sensitive or privileged. You are not free, even
> in the privacy of your home, to share any of the details of
> ongoing investigations, or confidential information about
> any aspect of the department. This is a basic condition of
> employment. Even more than other county agencies, we
> require you to act professionally, not to gossip or break
> confidences, and to handle any inter-personal, inter-agency
> disputes as professionals.

ECF No. 20-1, Ex. 8. Based on Mr. Groseclose's self-report to the County of his disclosure to the friend, the County investigated the matter and gave him a written reprimand, which stated in part: "I found that complaint [from the 2005 incident] sustained and counseled you regarding the appropriate dissemination of information. I believe these incidents are similar enough in nature to warrant your receipt of this written reprimand . . . ." *Id.*

ORDER GRANTING DOUGLAS COUNTY'S MOTION FOR SUMMARY JUDGMENT- 4

The County has not yet disciplined Mr. Groseclose for accessing Spillman to obtain the incident report pertaining to Ms. Corter. ECF No. 20-1, at 33.

On March 23, 2012, Ms. Corter filed this § 1983 lawsuit against the County and Mr. Groseclose. In regard to the County, Ms. Corter claims it ratified Mr. Groseclose's actions and failed to train and supervise Mr. Groseclose. ECF No. 20-1, at 15-19. On June 6, 2013, Douglas County filed the instant summary-judgment motion. ECF No. 17.

**B.    Standard**

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden . . . [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "In the language of the Rule [56], the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (emphasis in original) (quoting Fed. R. Civ.

1   P. 56(e)).  When considering a motion for summary judgment, the Court

2   does not weigh the evidence or assess credibility; instead, "the

3   evidence of the non-movant is to be believed, and all justifiable

4   inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby,*

5   *Inc.*, 477 U.S. 242, 255 (1986).

6   **C.   Analysis**

7        To support her § 1983 claim against the County, Ms. Corter must

8   show 1) her constitutional right was violated and 2) that the

9   violatory conduct was committed by the County, while acting under

10  color of state law.  42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48

11  (1988).   The Court addresses below whether Ms. Corter presented

12  sufficient evidence as to each of these elements to survive summary

13  judgment.

14       1.   <u>Constitutional Right: Informational Privacy</u>

15       The first § 1983 prong is whether a constitutional right was

16  violated; the right at issue here is Ms. Corter's right to

17  informational privacy.   "[T]he right to informational privacy is not

18  absolute; rather, it is a conditional right which may be infringed

19  upon a showing of proper governmental interest."   *Tucson Woman's*

20  *Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004) (quoting *Planned*

21  *Parenthood of S. Ariz. v. Lawall*, 307 F.3d 783, 790 (9th Cir. 2002)).

22  To determine whether the government's interest in disclosing the

23  information outweighs the individual's privacy interest, the Court

24  balances the following factors:

25       (1) the type of information requested, (2) the potential
     for harm in any subsequent non-consensual disclosure, (3)
26       the adequacy of safeguards to prevent unauthorized

ORDER GRANTING DOUGLAS COUNTY'S MOTION FOR SUMMARY JUDGMENT- 6

disclosure, (4) the degree of need for access, and (5)
whether there is an express statutory mandate, articulated
public policy, or other recognizable public interest
militating toward access.

*Id.*

After balancing the above factors in light of the submitted
evidence, the Court finds Ms. Corter establishes triable issues of
fact as to whether her conditional constitutional right to privacy was
violated.   First, Mr. Groseclose discovered sensitive medical
information pertaining to Ms. Corter.   Second, because of the
disclosure of this sensitive medical information during the
guardianship proceedings, Ms. Corter was at risk of losing custody of
her oldest son.  Third, the County recognizes the need to restrict law
enforcement's use of investigative information to only law-enforcement
purposes and has established policies to that effect; however, there
are few safeguards to prevent the disclosure of such information by a
law enforcement officer for personal use.   Fourth, there was no
legitimate law enforcement purpose for Mr. Groseclose to access the
incident report pertaining to Ms. Corter.  Finally, the County has not
articulated a public need for Mr. Groseclose's access to, and
disclosure of, the incident report related to Ms. Corter.
Accordingly, after considering these factors, the Court determines Ms.
Corter submitted sufficient evidence to establish triable issues of
fact relating to whether her conditional constitutional right to
privacy was violated.  Douglas County's motion is denied in this
regard.

///

ORDER GRANTING DOUGLAS COUNTY'S MOTION FOR SUMMARY JUDGMENT- 7

2.  <u>Under Color of State Law</u>

The second § 1983 prong is whether the unconstitutional conduct was committed by a person acting under color of state law.  There is no dispute that the County, as a municipality, is a person under § 1983 and may be liable for a constitutional violation.  *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). However, it is disputed whether the County "acted" under color of state law.

A municipality cannot be liable based on respondeat superior; instead to prove a municipality "acted" under color of state law, a plaintiff must show that a "policy or custom" of the municipality caused the injury.  *Id.* at 689-91.  There are three ways to show a "policy or custom": 1) a "promulgated, adopted, or ratified" policy of a municipality, *Thompson v. City of L.A.*, 885 F.2d 1439, 1443 (9th Cir. 1989), *overruled on other grounds by Bull v. City & Cnty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010); 2) a permanent and well-settled practice amounting to a municipal custom, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); or 3) a failure to train municipal employees adequately, *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-91 (1989).  At issue here is whether the County ratified Mr. Groseclose's conduct or failed to train or supervise Mr. Groseclose as to the proper handling of law-enforcement information.

a.  *Ratification*

Ms. Corter claims the County is liable because it ratified Mr. Groseclose's conduct.  If a final policymaker approves the decision of a subordinate and its basis, then the municipality is liable because

ORDER GRANTING DOUGLAS COUNTY'S MOTION FOR SUMMARY JUDGMENT- 8

it ratified the conduct. *Prapotnik*, 485 U.S. at 127. A municipal policy must be an affirmative, conscious, or deliberate choice. *See, e.g., Fuller v. City of Oakland*, 47 F.3d 1522, 1535 (9th Cir. 1995) (finding ratification because police chief approved a report concluding that alleged sexual harassment incidents did not occur); *Hammond v. Cnty. of Madera*, 859 F.2d 797, 802 (9th Cir. 1988) (finding ratification because county board accepted and approved illegal deeds leading to deprivation of property rights), *overruled on other grounds by Wood v. Ostrander*, 851 F.2d 1212 (9th Cir. 1988).

Ms. Corter argues that the County's minimal punishment of Mr. Groseclose's two prior violations and failure thus far to reprimand him for improperly accessing Spillman and using the obtained information for personal gain evidences the County's ratification of his Spillman wrongdoing. That the County has not yet disciplined Mr. Groseclose for his improper Spillman access does not equate to ratification by the County. *See, e.g., Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992) ("It does not alter our conclusion that City Manager Gleason's inaction in Gillette's case does not amount to "ratification" under . . . *Praprotnik*."). There is no evidence of an affirmative, conscious, or deliberate choice by the County to ratify Mr. Groseclose's improper access of Spillman for personal gain. Accordingly, the County's motion is granted in this regard.

    b. *Failure to Train and Supervise*

Ms. Corter claims the County is liable because it has a custom or policy of failing to train and supervise its employees in regard to proper access and use of investigative information. A municipality is

liable for its employee's constitutional violations under the failure-to-train-and-supervise theory of liability if: 1) "the county has customs or policies that amount to deliberate indifference," and 2) "these customs or policies were the moving force behind the employee's violation of constitutional rights." *Long v. City of L.A.*, 442 F.3d 1178, 1186 (9th Cir. 2006) (citing *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1193-93 (9th Cir. 2002)).

Ms. Corter argues a jury should assess whether Douglas County was deliberately indifferent by inadequately training/supervising its employees as to the use of confidential information. A municipality's inadequate training amounts to deliberate indifference when: 1) policymakers continue to adhere to a training/supervision program they know or should know has failed to prevent tortious conduct by employees; 2) there is a pattern of tortious conduct by employees; or 3) a constitutional violation is highly predictable based on the failure to give employees "tools to handle recurring situations." *Long*, 442 F.3d at 1186.

The Court recognizes that whether a local government has "displayed a policy of deliberate indifference to the constitutional rights of its citizens is generally a jury question." *Gibson*, 290 F.3d at 1194-95 (citing *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1478 (9th Cir. 1992)). However, after considering the evidence in the light most favorable to Ms. Corter, the Court determines it must grant the County summary judgment.

The evidence establishes that Mr. Groseclose violated the County's policies regarding the proper disclosure of investigative

information on two prior occasions.  However, there is no evidence that other County employees have committed similar violations. Accordingly, there is no evidence to establish a triable issue of fact as to whether the County continued to adhere to an information-disclosure training/supervision program that it knew or should have known failed to prevent tortious disclosures by its employees.  It is undisputed that the County had policies regarding the proper access to and disclosure of investigative information, and that Mr. Groseclose received these policies when he was employed and reminded of such after his two previous improper disclosures.  The County investigated and disciplined Mr. Groseclose for his two prior improper disclosures. For his first improper disclosure of information, the County provided Mr. Groseclose with counseling; for his second improper disclosure of information, the County placed a written reprimand in his file.  On both occasions, Mr. Groseclose was reminded of the particular County policy that he violated.  Although each of these two prior incidents involved Mr. Groseclose improperly disclosing investigative information, the circumstances of each were different from each other, as well as different from his improper access to and disclosure of information pertaining to Ms. Corter's incident report.  The County took appropriate graduated steps to address Mr. Groseclose's improper disclosures:  disclosures that, under this record, are isolated to Mr. Groseclose and do not extend to other County employees.  At the time of Mr. Groseclose's improper Spillman access and then subsequent use of that information in the guardianship procedure, Mr. Groseclose's conduct was not indicative of a deliberately-indifferent

training/supervision program by the County, but rather "rogue conduct" by a County detective.    There is no evidence of adherence to a training/supervision program that the County knew failed to prevent tortious conduct by its employees, or of a pattern of tortious conduct by untrained County employees.    The County provided Mr. Groseclose with the tools to properly access and disseminate investigative information.    Mr. Groseclose's instant conduct was not highly predictable by the County.

Because the Court finds Ms. Corter presented insufficient evidence to support a triable issue of fact as to whether the County failed to properly train or supervise Mr. Groseclose, the Court need not address whether its training policy was the moving force that caused Ms. Corter's injury.    Summary judgment granted in Douglas County's favor.

**D.    Conclusion**

For the above-given reasons, **IT IS HEREBY ORDERED**:

1.    Douglas County's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED**.

2.    **Judgment** is to be entered in Douglas County's favor with prejudice.

**IT IS SO ORDERED.**    The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this __20th__ day of September 2013.

_____
s/ Edward F. Shea
EDWARD F. SHEA
Senior United States District Judge
